UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Union Leader Corporation</u>

     **v.**                                             Case No. 12-cv-134-PB
                                                         Opinion No. 2013 DNH 051
<u>US Department of Homeland Security,
Immigration and Customs Enforcement</u>

**MEMORANDUM AND ORDER**

     The Union Leader Corporation ("Union Leader"), a New Hampshire newspaper, filed a complaint based on the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security, to produce records of the names and addresses of six individuals ICE arrested in 2011.  ICE filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment, claiming that the names and addresses are exempt from disclosure.  The Union Leader responded by objecting to ICE's motion to dismiss and filing a cross-motion for summary judgment.[1]  For the reasons provided below, I deny the Union Leader's motion and grant ICE's motion for summary judgment.

---

[1] The Union Leader's combined filing does not comply with Local Rule 7.1(a)(1).  Under that rule, "[o]bjections to pending motions and affirmative motions for relief shall not be combined

## I. BACKGROUND

Operation Cross Check is a national immigration enforcement initiative designed to arrest convicted criminal aliens, including "criminal fugitives; criminal aliens who illegally reentered the United States after having been removed; and at large criminal aliens." Doc. No. 1-1. The first nationwide Cross Check operation resulted in the arrest of 2,442 convicted criminal aliens. In 2011, ICE performed its second Cross Check operation. That operation resulted in the arrest of 2,901 convicted criminal aliens, six of whom were arrested in New Hampshire. On September 28, 2011, ICE's public affairs office issued an Operation Cross Check press release describing the operation and listing cities in New England where ICE arrested individuals.

The Union Leader contacted an ICE public affairs officer to request the names and addresses of the six individuals arrested in New Hampshire during Operation Cross Check. The officer provided the Union Leader information about the arrestees, including the individuals' sexes, ages, countries of birth, state of arrest (i.e. New Hampshire), criminal conviction

---

in one filing." Nonetheless, I will consider both parts of the filing because ICE has responded to both.

information, and ICE custody status, but not the names and addresses of the individuals. The Union Leader filed suit in this court on January 13, 2012. Finding that the Union Leader failed to exhaust its administrative remedies, the court dismissed the Union Leader's suit on March 23, 2012. Union Leader Corp. v. U.S. Dep't of Homeland Security, Immigration and Customs Enforcement Div., No. 12-cv-18-JL, 2012 WL 1000333, at *3 (D.N.H. Mar. 23, 2012).

On February 29, 2012, the Union Leader submitted a FOIA request to ICE seeking "any and all records and documents relating to, and/or concerning the six individuals" ICE arrested in New Hampshire during the agency's second Cross Check operation.[2] Doc. No. 1-3. The Union Leader's request did not

---

[2] Specifically, the Union Leader requested:
> Copies of any and all records and documents relating to, and/or concerning the six individuals arrested by [ICE] and identified in an email sent by Chuck Jackson, Public Affairs Officer, U.S. Immigration and Customs Enforcement, Thomas P. O'Neil Federal Building, Suite 722, 10 Causeway Street, Boston, Massachusetts, on October 13, 2011, reading as follows:
> - Male, 32, from Mexico, arrested in New Hampshire, convicted of DUI and assault; still in ICE custody
> - Male, 31, from Dominican Republic, arrested in New Hampshire, convicted of assault and shoplifting; still in ICE custody
> - Male, 63, from Bolivia, arrested in New Hampshire, convicted of cocaine possession; still in ICE custody

3

include a privacy waiver or other authorization from any of the six individuals. Doc. No. 7-2. ICE's FOIA office reviewed the request and forwarded it to the ICE Office of Enforcement and Removal Operations[3] ("ICE ERO") after determining that ICE ERO might have records responsive to Union Leader's request. ICE's search resulted in nineteen pages of responsive documents, which consisted of forms I-213 for each of the six criminal aliens.[4]

Deputy FOIA Officer Ryan Law reviewed the responsive records and redacted portions of the documents, including the

---

- Male, 23, from Columbia, arrested in New Hampshire, convicted of cocaine possession; still in ICE custody
- Male, 42, from Mexico, arrested as a fugitive in New Hampshire for illegal entry; still in ICE custody; [and] (vi) Male, 36, from Dominican Republic, arrested in New Hampshire, convicted of selling cocaine.

Doc. No. 1-3.

[3] ICE ERO is responsible for the execution of Operation Cross Check and is tasked with identifying and apprehending removable aliens, detaining individuals when necessary, and removing illegal aliens from the United States. Doc. No. 7-2.

[4] ICE law enforcement officers fill out a form I-213 to document the arrest of an individual who is unlawfully in the United States. The form contains a narrative description of the encounter and documents the action ICE took upon the individual's arrest. I-213 forms also contain the name, alien number, address, date of birth, photograph, fingerprints, criminal and immigration history, and other information about the individual being arrested. Doc. No. 1-4.

names and addresses of the criminal aliens.[5] ICE created a Vaughn index to document the redactions and identify the exemptions claimed to justify nondisclosure,[6] Doc. No. 7-3, and disclosed the redacted I-213 forms to the Union Leader on March 9, 2012.[7] According to the redacted forms, one of the criminal aliens arrested by ICE was ordered removed by an immigration judge and will remain in ICE custody pending removal; two were scheduled for a hearing before an immigration judge at a later date; and three were processed and served with a notice to appear for removal proceedings.

---

[5] ICE also redacted the aliens' names, home addresses, alien numbers, birth dates, photographs, fingerprints, social security numbers, and places of employment. Doc. No. 1-4.

[6] The term "Vaughn index" refers to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). It is an index prepared by an agency that provides "a general description of each document sought by the FOIA requester and explains the agency's justification for nondisclosure of each individual document or portion of a document." Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).

[7] In the Union Leader's brief, it notes that "ICE did not produce the Notice to Appear, Warrant of Arrest, Custody Actions and Decisions, Case Actions and Decisions, and documents containing Bond Management information relating to each of the six (6) criminal aliens identified in Union Leader's request." Doc. No. 8-1. The Union Leader apparently learned of the existence of these responsive documents after it made its FOIA request on February 29, 2012. Because the Union Leader does not seek these documents in the present action, I do not address ICE's failure to produce them.

5

On March 14, 2012, the Union Leader administratively appealed ICE's initial determination that the names and addresses of the arrestees are exempt from disclosure. Doc. No. 1-5. On March 28, 2012, the ICE Office of Principal Legal Advisor, Government Information Law Division responded to the Union Leader's appeal and upheld ICE's determination to partially withhold the records. Doc. No. 7-8. Having exhausted its administrative remedies, the Union Leader filed this action on April 4, 2012, seeking a judicial order compelling ICE to produce the names and addresses of the six individuals arrested in New Hampshire during 2011.

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment Standard

ICE seeks dismissal of this action on the ground that the court lacks subject matter jurisdiction because ICE has not unlawfully withheld records. In the alternative, ICE moves for summary judgment.

Ordinarily, a motion to dismiss for lack of subject matter jurisdiction is analyzed under Rule 12(b)(1). A court, however, must treat a motion challenging subject matter jurisdiction as a motion for summary judgment "where jurisdictional issues cannot

be separated from the merits of the case." Gonzales v. United States, 284 F.3d 281, 287 (1st Cir. 2002); see Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 & n.3 (1st Cir. 2001).  "A jurisdictional issue is intertwined with the merits where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims in the case." Gonzales, 284 F.3d at 287.

 To invoke subject matter jurisdiction under the FOIA, a plaintiff must allege that the agency "(1) 'improperly' (2) 'withheld' (3) 'agency records.'" Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).  If the elements of jurisdiction are properly alleged, the burden shifts to the agency to show that the records sought by the plaintiff are not agency records or were not improperly withheld. U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  "[B]ecause FOIA serves as the source of both this court's subject matter jurisdiction and the plaintiff['s] cause of action, the jurisdictional inquiry is intertwined with the merits of [its] claim." Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D.N.H. 2003); see United States ex rel. Fine v. MK-Ferguson Co., 99 F.3d 1538,

7

1543 (10th Cir. 1996). Accordingly, I analyze the FAA's motion under Rule 56.

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

**B.   The FOIA Standard**

The FOIA was enacted to facilitate public access to government documents. John Doe Agency v. John Doe Corp., 493 U.S. 146, 151 (1989). It was designed to "pierce the veil of

8

administrative secrecy and to open agency action to the light of public scrutiny." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)).  The underlying policy is one of broad disclosure. Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).  An agency must make its records available to the public upon request, unless it determines that a specific exemption, narrowly construed, applies.  5 U.S.C. §§ 552(a)(3),(b); see Aronson v. IRS, 973 F.2d 962, 966 (1st Cir. 1992).  The court conducts a de novo review of the validity of the agency's asserted exemptions.  Church of Scientology, 30 F.3d at 228.

Given the strong presumption in favor of disclosure, an agency seeking to withhold materials requested under the FOIA has the burden of proving that those materials are exempt from disclosure.  Ray, 502 U.S. at 173; Orion Research Inc. v. EPA, 615 F.2d 551, 553 (1st Cir. 1980) (citing 5 U.S.C. § 552(a)(4)(B)).  The FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b); see Wightman v. Bureau of Alcohol, Tobacco & Firearms, 755 F.2d 979, 981 (1st Cir. 1985).

9

The burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document. Ray, 502 U.S. at 173.

Congress "recognized that the policy of informing the public about the operation of its Government can be adequately served in some cases without unnecessarily compromising individual interests in privacy." Id. at 174. The questions in this case are whether the disclosure of the I-213 forms, with names and addresses redacted, adequately served the statutory purpose and whether the release of identifying personal information would constitute an "unwarranted" invasion of privacy. See 5 U.S.C. § 552(b)(7)(C).

### III. ANALYSIS

Two exemptions potentially cover the information the Union Leader requested. Exemption 6, applies to private information, and Exception 7(C), applies to private information compiled for law enforcement purposes. Both exemptions require me to balance the public interest in disclosure against the individuals' interest in privacy.[8] Exemption 7(C) is more protective of

---

[8] Exemption 6 excludes "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §

10

privacy than Exemption 6 and thus requires a more substantial public interest justification to override a valid individual privacy interest.  U.S. Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 497 n.6 (1994); see Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 165-66 (2004); U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 756 (1989).  Both parties agree that the information the Union Leader seeks is potentially subject to Exemption 7(C) because it was collected for law enforcement purposes.  Accordingly, I analyze the Union Leader's claim under Exemption 7(C).[9]

The Union Leader cites American Federation of Government Employees v. Dep't of Housing and Urban Development, 118 F.3d 786, 794 (D.C. Cir. 1997), for the proposition that the disclosure of an arrest does not violate an arrestee's constitutional right to privacy.  See Doc. No 8-1; see also Paul

---

552(b)(6).  Exemption 7(C) excludes "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

[9]  Precedents that apply Exemption 6 are nonetheless relevant to my analysis of Exemption 7(C) insofar as they identify cognizable public and private interests.  See Reporters Comm., 489 U.S. at 756.

v. Davis, 424 U.S. 693, 712-714 (1976) (no constitutional privacy right affected by publication of name of arrested but untried shoplifter). Although I accept this proposition, it is beside the point because, as the Supreme Court has recognized, "privacy" under the FOIA has a more expansive meaning than it has under either the Constitution or the common law. See Favish, 541 U.S. at 158 (citing Reporters Comm., 489 U.S. at 762 n.13); Associated Press v. U.S. Dep't of Def., 554 F.3d 274, 287 (2d Cir. 2009). Thus, it is a mistake to assume, as the Union Leader does in this case, that a ruling that the Constitution does not require the government to withhold the name of an arrested person means that the government must disclose the same information under the FOIA.

The Union Leader is similarly misguided in attempting to rest its case on state laws in New Hampshire, Vermont, Ohio, California, Connecticut, and Wisconsin that require the disclosure of arrest records. Of course, states are free to disclose such records if they choose, but the federal government is not bound to follow their lead. My job is to faithfully interpret the law that is before me. I do not have the power to disregard statutory text and controlling precedent merely

12

because legislatures in several states have elected to follow a different path.

The privacy interest at stake here is the interest of the arrestees in not having their identities revealed to the public. In Reporters Committee, the Supreme Court noted that the notion of privacy under the FOIA "encompass[es] the individual's control of information concerning his or her person." 489 U.S. at 763. The Court also stated that "the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." Id. at 770 (citation and quotations omitted). In the context of this case, the disclosure of arrestees' names and addresses could subject them to harassment, embarrassment, or unwanted public attention because the fact that they have been arrested is not widely known. Accordingly, I follow the lead of other courts that have recognized that individuals can have a protectable privacy interest under the FOIA in their names and addresses. See Associated Press, 554 F.3d at 292 ("an individual has a general privacy interest in preventing dissemination of his or her name and home address"); Harbolt v. Dep't of State, 616 F.2d 772, 774 (5th Cir. 1980) ("nothing

13

could be more personal than an individual's name and home address, when linked with the stigma of incarceration abroad").

An individual's interest in privacy, however, must be balanced against the public interest in disclosure of the information.  Once the government has identified a cognizable privacy interest, the relevant public interest for purposes of the FOIA is the citizens' right to be informed about "what their government is up to."  Reporters Comm., 489 U.S. at 773 (citations omitted).  "That purpose . . . is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  Id.  The question thus becomes the extent to which disclosure of the names and addresses of the arrestees would shed light on ICE's performance of its statutory duties or otherwise let citizens know "what their government is up to."  See id.

The Union Leader does not argue that the disclosure of the names and addresses of arrestees would directly reveal anything about the way in which the government is conducting Operation Cross Check.  Instead, it argues that the public interest would be served if the information is disclosed because the public might be able to use the names and addresses to discover

14

additional relevant information. I am not persuaded by this "derivative use" argument because the Supreme Court has recognized that such arguments must be based on more than "[m]ere speculation about hypothetical public benefits." Ray, 502 U.S. at 178-79.

In this case, the Union Leader bases its public interest analysis entirely on speculation about what the public might learn if the names and addresses of the arrestees were disclosed. The FOIA does not require the government to disclose the names of arrestees under such circumstances. Although the names and addresses have been redacted from the I-213 forms, the forms disclose the circumstances and details of each arrest.[10] Nothing prevents the arrestees from identifying themselves, disclosing the fact that they were arrested, or disclosing the circumstances of their arrests. Because the Union Leader has not explained how more would be revealed about the government's conduct during Operation Cross Check if the names and addresses were disclosed, I conclude that any additional information that

---

[10] At oral argument, the Union Leader submitted the results of a supplemental search that ICE performed "in an effort to reach an amicable resolution" of the case. If anything, this information only sheds more light on the circumstances of the arrests and undermines the Union Leader's argument that the names are necessary to know "what the government is up to."

15

could be gained from disclosure of the names and addresses is merely speculative and does not outweigh the individuals' privacy interests.

Accordingly, I join several other district courts that have upheld the redaction of identifying information from I-213 forms under Exception 7(c) of the FOIA. See Schiller v. Immigration and Naturalization Serv., 205 F. Supp. 2d 648, 664 (W.D. Tex. 2002); The Buffalo Evening News, Inc. v. U.S. Border Patrol, 791 F. Supp. 386, 400 (W.D.N.Y. 1992); see also Unidad Latina en Acción v. U.S. Dep't of Homeland Sec., 253 F.R.D. 44, 51 (D. Conn. 2008) (holding that Exception 7(C) applies to biographical information about individuals arrested in federal immigration enforcement action).

## V.  CONCLUSION

For the aforementioned reasons, I deny the Union Leader's motion for summary judgment (Doc. No. 8) and grant the Department of Homeland Security's motion for summary judgment (Doc. No. 7).

SO ORDERED.

                                        /s/Paul Barbadoro
                                        Paul Barbadoro
                                        United States District Judge

April 18, 2013

cc:     Gregory V. Sullivan
        Michael T. McCormack